ASAHEL H. DILLON, and others *vs.* THE CONNECTICUT
MUTUAL LIFE INSURANCE COMPANY.

*Jurisdiction in Equity—Insurance Agent—Commissions—
Breach of Contract—Recoupment—The averments of Fraud
in a Bill being sufficient to vest Jurisdiction, the mere Denial
of them will not Oust it—Order from which an Appeal will
not lie—Duty of Courts of Equity in respect to Ordering
money to be brought into Court.*

D. from the year 1864, until his discharge on the 5th of March, 1875, was a
general agent of a life insurance company, and had the office of his agency
in the city of Baltimore. It was part of his duty as such agent, to collect
for a certain commission, and remit to the company from time to time, all
premiums on policies issued by the company, and on renewals thereof. In
September, 1874, the company directed all its agents to deposit all premiums
collected by them, less their proper commissions, in some bank which they
should select, in a separate account, showing the deposits to be for the sole
use of the company. In compliance with this direction D. selected a
bank. in the city of Baltimore as his depository, and made his deposits
accordingly. But from the 1st of January, 1875, up to the time of his dis-
charge in March following, he did not so deposit all the money he thus col-
lected for the company, but retained a portion thereof in his own possession,
and deposited the same elsewhere. On a bill filed by the company against
D for an account, and payment to it of the moneys so retained by him, and
charging the same to have been so retained by him with intent to defraud
the company and convert said money to his own use; and asking an order
for the payment of the money into Court, or the appointment of a receiver to
take charge of the same, under its alleged belief that D. would otherwise
make way with it, so that it would be wholly lost to the complainant, it was
HELD:

That the bill made out a case within the jurisdiction of a Court of Equity.

D in his answer denied the allegation of fraud, and set up an agreement with
the company at the time of his entering into its service, that he should re-
ceive a commission on all old and on all new business; and alleged that it

was expressly agreed *that he should continue to receive this per centage so long as the premiums should continue to be paid to the company*, and that under an apprehension that he was about to be dismissed by the company, and that the company would refuse to allow him commissions after he should cease to be its agent, and in order to protect and indemnify himself against such injustice, and not from any fraudulent intent, he retained and deposited·elsewhere than in the bank, the money in question, but kept the amount so retained largely within the damages to which the breach of the contract by the company would entitle him. Apart from the admissions of D. it also appeared by the proof that all of this money was collected by him *before* he was discharged from his agency, and that the money retained by him was a balance remaining after deducting all the commissions to which he was entitled upon the premiums actually collected by him    On appeal from an order of the Court below directing him to bring the money into Court, it was HELD :

1st. That when D. as agent, collected money on premiums and took out of it his commissions, he was all the while performing the contract, and receiving all that under the contract he was entitled to ; and it became his duty at once to pay the balance as he received it over to the company, or deposit it in bank, as directed by the orders of his principal.

2nd.   That he had no right to retain *this money* in expectation or anticipation that the company would thereafter do some act which would give him a right to sue them in damages for breach of the contract, and deprivation of future commissions.

3rd. That his retention of the money being thus wrongful at the time, it could not become lawful by the *subsequent* act of the company in dismissing h m and breaking the contract as respects his future commissions.

4th. That there is no authority which would justify the application of the doctrine of recoupment to such a case, and it would be an unwise and dangerous extension of that doctrine for the Courts to allow it to be so applied.

5th. That the averments of fraud in the bill being sufficient to vest jurisdiction, the mere denial of them in the answer did not oust it. And the proof then in the cause having been all taken under the order to show cause why the money should not be brought into Court, and no general commissions having been issued under which testimony in support of the bill and answer had been taken, the Court could not assume that all the proof in support of the allegations of fraud which the complainant might have to adduce, had been offered.

6th. That D. must be regarded as a trustee, and the fund in his hands must be considered as so far impressed with a trust as to give a Court of Equity jurisdiction of the case on that ground, if no other.

7th. That no appeal would lie from the order to bring the money into Court. Though the practice of ordering money into Court has become one of the most ordinary methods by which the Court enforces its jurisdiction of preserving property in dispute pending a litigation, there are certain well defined restrictions and limitations upon it, which Courts of Equity should always be careful to observe.

APPEAL from the Circuit Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*S. Teackle Wallis,* for the appellant.

*John Carson* and *Charles Marshall,* for the appellee.

MILLER, J., delivered the opinion of the Court.

A motion has been made to dismiss this appeal which is taken from an order directing the appellant, Dillon, to pay into Court the sum of $21,400.19. After answer filed, all the testimony now appearing in the record, was taken under an order to show cause why the money should not be brought in. We do not propose to state at length the averments of the bill or of the answer, but simply such facts admitted by the pleadings, and established by the proof, as are necessary to a correct understanding and decision of the immediate question before us.

Dillon from the year 1864 until his discharge on the 5th of March, 1875, was a general agent of the appellee, a life insurance company, and had the office of his agency in the City of Baltimore. It was part of his duty as such

agent, to collect, for a certain commission, and remit to the company from time to time, all premiums on policies issued by the company and on renewals thereof. In September, 1874, the company for the better protection of its interests, and those of its policy holders, directed all its agents to deposit all premiums collected by them, less their proper commissions, in some bank which they shoul l select. in a separate account, showing the deposits to be for the sole use of the company, and subject to be drawn by the agents, by checks payable to the order of the company or its officers only. In compliance with this direction, Dillon selected the First National Bank of Baltimore as his depository, and made deposits therein accordingly. But from the 1st of January, 1875, up to the time of his discharge in March following, he did not so deposit all the money he thus collected for the company, but retained in his own possession and deposited elsewhere, the amount now in controversy. The bill which was filed on the 10th of March, 1875, charges that this retention and withholding of the money was with intent to defraud the company, and to convert the money to his own use, and amongst other relief, prays that he may be required to render an account of the money so received by him, and to pay over the same to the company, and forasmuch as the complainant has just cause to believe, and does believe and charge, that if not prevented, he will, pending these proceedings, make way with the money so that it will be wholly lost to the complainant, it prays in the meantime, for an order requiring him to bring the money into Court, or that a receiver be appointed to take charge of the same, to abide the further action of the Court in the premises. It must be conceded, (as it was in fact at bar,) that the bill makes out a case within the jurisdiction of a Court of equity.

In his answer, Dillon admits that he has collected and retained in his own possession, and has now in his hands

or under  his  control, this  sum  of  $21,400.19,  but  indig-
nantly and emphatically denies and repels all the charges
of fraud and assaults upon his integrity, contained in the
bill.   He avers that when he entered into the company's
service, it was agreed he should receive certain specified
commissions on all old and on all new business, and that
it was expressly agreed, *that he should continue to re-
ceive this percentage on such business so long as the premiums
should continue to be paid to the company ;* that the mode,
character and duration of the pay thus to be received by
him, were at that time customary in life insurance busi-
ness, no agent of character or capacity, being willing,
except under special circumstances, to undertake the ardu-
ous duties of such an agency, and pay out the large com-
missions required by sub-agents for procuring customers,
unless secured in the right to receive his commissions as
aforesaid, *pending the running of the policies and renewals,
whether he remained in the service of the company or not.*
He then charges that from certain acts of the company or
its officers, which are stated at length, and especially by
their requiring him to execute a bond, the terms of which
would involve an abandonment of the benefits of his con-
tract, and by the declaration to him, of Greene, the com-
pany's secretary, that he would not recognize any right of
respondent to receive commissions, after ceasing to be
agent, and that the company would insist on its right to
terminate his agency, and deprive him of such commis-
sions at its pleasure, he became assured it was the pur-
pose and object of Greene and the company, by the exac-
tion of this bond and their subsequent course, fraudulently
and illegally to drive him to such action, as would give
them a pretext for pretending to remove him from office
for cause ; that he became finally and fully convinced of
this purpose and determination on the part of the com-
pany, in December, 1874, and he then on his part, re-
solved to protect and indemnify himself as far as he was

able, against such injustice, and for that reason alone, and not for any fraudulent or improper purpose whatever, he retained and deposited elsewhere than in the bank, and still retains under his control, the money in question, but kept the amount so retained, largely within the damages to which the breach of the contract by the company would entitle him, and is prepared to prove by competent actuaries that this sum is much less than what he will be entitled to receive under the contract for the value and breach thereof. He further states, that before receiving process in this suit, he instituted an action at law in the Superior Court, where the same is now pending, to recover damages from the company for its breach of this contract, over and above the amount so retained, which amount he avers is wholly inadequate to his sufficient indemnity and compensation. He admits the company is entirely able to pay all its just dues, but submits he is in no way compelable on that account to surrender rights which attach to the nature of the transaction, and not to the pecuniary abilities of the parties.

Besides the admissions in the answer, it appears by the proof that all of this money was collected by Dillon, *before* he was discharged from his agency, and that the sum ordered to be brought into Court, is a balance remaining after deducting all the commissions to which he was entitled. Had he any legal or equitable right to retain this money? We know of no ground upon which that right can be placed, unless the position suggested in the answer and elaborated in the argument for the appellant, can be sustained. That position is, that Dillon had the right to *recoup* the damages he sustained by the breach of the alleged contract, out of the moneys he so retained, and consequently has the right to retain them for that purpose. Let us briefly consider this proposition. It is claimed, (as it must be to sustain the point,) that he had the right to bring his action against the company for

breach of this contract, and to recover in such action the present value in gross of the future commissions. Assuming then for the sake of the argument he could do this, when did the right to bring this action arise? Not in our opinion until he was discharged, or ceased to be the company's agent. So long as he continued agent, collecting premiums and receiving the accruing commissions on them, it would, we think, be impossible for him to sustain such a suit, no matter how unequivocally and positively the company may have declared its refusal to recognize his right to receive commissions after the termination of his agency, or denied the existence of any contract to that effect. Indeed, we cannot conceive how the company could place itself in any position towards this alleged contract that would give ground for this action, so long as it permitted him to remain in the agency. From its very nature, the case in our judgment, is not one to which the law as stated in *Hochster vs. De Latour*, 20 *E. L. & Eq. Rep.*, 157, can be applied. This is not a pre-contract for future services, or the performance of some act at a future period, where performance cannot be commenced, and was not by the contract contemplated, until that period arrived; and we have said in *Dugan vs. Anderson*, 36 *Md.*, 584, it is to that class of cases alone, that the law of *Hochster vs. De Latour* relates. But it is a case in which *performance of the contract was entered upon*, and was being carried out day by day as the agency continued. The right to sue for future commissions, could arise only by the *act* of the company in discharging the agent, or other termination of the agency. It was the discharge and dismissal of the clerk, and breaking up, by the defendant; by that act, of the entire contract, that gave and sustained the right of action in *Dugan vs. Anderson;* and this we think is a much plainer case, requiring an actual dismissal of the agent before the right of action insisted upon, could exist. When, therefore, Dillon, as agent, collected

money on premiums, and took out of it his commissions, he was all the while performing the contract, and receiving all that under that contract he was entitled to, and it became his duty at once to pay the balance as he received it, over to the company, or deposit it in bank as directed by the orders of his principal. In our judgment, he had no right to retain *this money* in expectation or anticipation that the company would thereafter do some *act*, which would give him a right to sue them in damages for breach of the contract, and deprivation of future commissions. Conceding then, as we do, upon the testimony before us, that in so retaining it, he acted, not upon any fraudulent motive, but honestly and in good faith, we yet think he acted mistakenly, and that this retention was without legal or equitable right; and being thus wrongful at the time, it could not become lawful by any *subsequent* wrongful act of the company in dismissing him, and breaking the contract as respects his future commissions. There is, we think, no authority which would justify the application of the doctrine of *recoupment* to such a case, and, in our opinion, it would be an unwise and dangerous extension of that doctrine for the Courts to allow it to be so applied.

But it has been further argued, that a Court of equity has no jurisdiction in this case, inasmuch as the averments of fraud, which it is insisted alone give that jurisdiction, have been denied by the answer, and have not been sustained by the proof. It is very doubtful whether this question of jurisdiction, even supposing it to depend entirely upon the allegations of fraud, is open for decision at this stage of the cause. It is conceded the averments of fraud are sufficient to vest jurisdiction, and of course the mere denial of them in the answer does not oust it, for in that event every such case would be thrown out of equity upon the coming in of the answer containing such denial. The proof now in the case, as we have said, was all taken

under the order to show cause why the money should not be brought in. No general commission has been issued under which testimony in support of the bill and answer has been taken, nor has the case been set down or submitted for final hearing. How can this Court, therefore, say that all the proof in support of the allegations of fraud, which the complainant may have to adduce, has yet been offered? But apart from this, and apart also from the grounds of discovery and account, which the appellee's counsel insist sustain the jurisdiction, we are of opinion it may well be rested upon another ground. Dillon not only held the fiduciary relation to the company of its agent, but was acting in respect to this, and all the money he collected while such agent, under specific directions as to what he should do with it, directions which the company had the right for its own protection and that of its policy holders, to have specifically performed. We do not, therefore, regard him as standing in the relation simply of a debtor to the company, nor do we regard this money in his hands, as in the nature of a mere debt due by him to the company, for which an action at law only will lie. He must, we think, be regarded and treated as a trustee, and the fund thus in his hands must be considered as so far impressed with a trust, as to give a Court of equity jurisdiction of the case on that ground if on no other.

If we are right in these views we should affirm this order if it were properly before us for review. The case thus made comes fully within the rules on the subject of such orders laid down by Chancellor BLAND, in *McKim vs. Thompson*, 1 *Bland*, 150 ; by Chancellor JOHNSON, in *Hopkins vs. McElderry*, 4 *Md. Ch. Dec.*, 23, and affirmed by the Court of Appeals in *Hagthorp vs. Hook*, 1 *G. & J.*, 310.

But we are further of opinion no appeal lies from this order. The right of appeal from Courts of equity is a statutory right, and does not exist except where expressly

given. An order like this is not among those mentioned in sec. 21, Art. 5 of the Code, or any amendment of that section, nor is it "an order in the nature of a final decree" from which an appeal is given by section 20 of that Article. This Court has repeatedly held that an order of the latter character authorizing an appeal, must be one which finally settles some disputed right or interest of the parties. We have carefully examined the case of *Thompson vs. McKim*, 6 *H. & J.*, 302, and the explanation of it in *Hagthorp vs. Hook*, and are satisfied the appeal in that case would not have been sustained, if the order there had been similar in its terms and effect to the one before us. This simply directs the money to be brought in by a given day, to be deposited in bank to the credit of the cause subject to further order, and this the Judge states was done for the sole purpose of placing the fund out of danger and in a state of greater security for the benefit of all concerned, and that is its only effect. The fact established by the proof that the appellant was possessed of no real, nor any visible personal property, had no doubt a strong influence in inducing the passage of the order. But be that as it may, the order does not profess to determine or affect any rights which either of the litigating parties may have to this fund, except the mere right to retain custody of it pending the litigation, and that is the necessary effect of every such order. It assumes the right of *recoupment*, for which the appellant contends, to exist, and holds the money subject to that right whether he may bring his action at law, or prove and set-off his damages in this case if that could be allowed. In either event it can work no injury to him, and the company will necessarily be the only loser so far as loss of interest on the fund is concerned, for if he should recover at law or prove his damages here, and this money could be applied in satisfaction thereof, it must be so applied as of the day of the judgment or final decree. If on the other hand, he should fail in his action

or defence, he will be responsible to the company for interest on the money so retained. From such an order we are clearly of opinion no appeal lies, and the motion to dismiss must therefore be sustained. While thus sustaining the motion and dismissing the appeal it is proper to say, that though the practice of ordering money into Court has become one of the most ordinary methods by which the Court enforces its jurisdiction of preserving property in dispute pending a litigation, (*Daniel's Ch. Pr.*, ch. *XLI*, sec. 1,) there are certain well defined restrictions and limitations upon it which Courts of equity should always be careful to observe. These limitations are well stated in the cases in our own State to which we have referred.

*Appeal dismissed.*

(Decided 9th March, 1876.)

