785 A.2d 1275

**STATE of Maryland,**

v.

**James GREEN, Jr.**

**No. 23, Sept. Term, 2000.**

Court of Appeals of Maryland.

Dec. 7, 2001.

62

64

Sarah Page Pritzlaff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioners.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

BELL, Chief Judge.

In this case, we must determine whether the State may appeal, either pursuant to a common law right of appeal or as a result of Maryland Code (1976, 1998 Repl.Vol.) § 12–302(c) of the Courts and Judicial Proceedings Article,[1] the granting,

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Code (1976, 1998 Repl.Vol.) § 12–302(c) of the Courts and Judicial Proceedings Article, provides:

* * * *

"(c) In a criminal case, the State may appeal as provided in this subsection.

(1) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.

(2) The State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

(3)(i) In a case involving a crime of violence as defined in § 643B of Article 27, and in cases under §§ 286 and 286A of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights.

(ii) The appeal shall be made before jeopardy attaches to the defendant. However, in all cases the appeal shall be taken no more than 15 days after the decision has been rendered and shall be diligently prosecuted.

(iii) Before taking the appeal, the State shall certify to the court that the appeal is not taken for purposes of delay and that the evidence excluded or the property required to be returned is substantial proof of a material fact in the proceeding. The appeal shall be heard and the decision rendered within 120 days of the time that the record on appeal is filed in the appellate court. Otherwise, the decision of the trial court shall be final.

(iv) If the State appeals on the basis of this paragraph, and if on final appeal the decision of the trial court is affirmed, the charges against the defendant shall be dismissed in the case from which the appeal was taken. In that case, the State may not prosecute the

by the Circuit Court for Prince George's County, of a criminal defendant's untimely filed motion to revise his statutorily mandated sentence. We shall hold that the State does not have a common law right to appeal a criminal sentence, in the process overruling our decision in *Cardinell v. State,* 335 Md. 381, 644 A.2d 11 (1994), but that its appeal in this case is expressly authorized by § 12–302(c)(2). Accordingly, we shall deny the petitioner's Motion to Dismiss the State's appeal and, on the merits, reverse the judgment of the Circuit Court.

## I.

The petitioner, James Green, Jr., was charged in a ten-count indictment with multiple offenses, including robbery with a deadly weapon and motor vehicle manslaughter. Having entered guilty pleas in the Circuit Court for Prince George's County to those offenses, he was sentenced, on March 28, 1994, for the robbery with a deadly weapon charge, as a repeat violent offender, pursuant to Maryland Code (1957, 1992 Rep. Vol.) Art. 27 § 643B(c),[2] to twenty-five years impris-

---

> defendant on those specific charges or on any other related charges arising out of the same incident.
>
> (v) Pending the prosecution and determination of an appeal taken under paragraph (1) and (3) of this subsection, the defendant shall be released on personal recognizable bail. If the defendant fails to appear as required by the terms of the recognizance bail, the trial court shall subject the defendant to the penalties provided in Article 27, § 12B.
>
> (vi) If the State loses the appeal, the jurisdiction shall pay all the costs related to the appeal, including reasonable attorney fees incurred by the defendant as a result of the appeal."

**2.** Maryland Code (1957, 1992 Rep. Vol.) Article 27 § 643B (Mandatory sentences for crimes of violence) provides, in pertinent part:

> "(a) Crime of violence defined: correctional institution defined.—As used in this section, the term "crime of violence" means abduction; arson in the first degree; kidnaping; manslaughter, except involuntary manslaughter; mayhem and maiming, as previously proscribed under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; car jacking or armed car jacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with intent to murder, assault with

onment, without the possibility of parole, and to a ten-year concurrent term for the motor vehicle manslaughter offense. The commitment record did not reflect those sentences accurately, however. Rather, it stated, incorrectly, that the twenty-five-year sentence without parole was for the motor vehicle manslaughter count and the ten-year concurrent sentence was for the robbery with a deadly weapon offense.

In June 1999, the petitioner filed a spate of motions challenging his sentences and seeking their modification. The petitioner filed two motions to correct an illegal sentence. Both were premised on the incorrect commitment record. In the first, he argued that his sentence to a mandatory term of twenty-five years without parole for motor vehicle manslaughter was illegal. In the second, the petitioner alleged that his twenty-five-year sentence without parole was illegal because he had not been convicted of a crime of violence on two separate occasions. The petitioner also moved for drug and alcohol abuse evaluation pursuant to Maryland Code (1982, 1994 Rep. Vol.) § 8–507 of the Health General Article.[3] The

---

intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree, as these crimes were previously proscribed under former § 12 of this article.

\* \* \* \*

(c) Third conviction of crime of violence.—Except as provided in subsections (f) and (g) of this section, any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. The court may not suspend all or part of the mandatory 25-year sentence required under this subsection, and the person shall not be eligible for parole except in accordance with the provisions of § 4–305 of the Correctional Services Article. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion."

3.   Maryland Code (1982, 1994 Rep. Vol.) § 8–507 of the Health General Article (Commitment for treatment) provides in relevant part:

following month, July 1999, the petitioner filed a Motion for Reconsideration of Sentence. In that motion, he argued that the twenty-five-year sentence pursuant to § 643B(c) was illegal because that provision "is not a mandatory provision."

The Circuit Court filed a corrected commitment record that accurately reflected the sentence the petitioner actually received. Taking the petitioner's motions to reconsider or revise his sentence under advisement, it also held a hearing on the motions and ordered the Maryland Department of Health and Mental Hygiene to evaluate the petitioner pursuant to § 8–507 and report to the court.

Subsequently, the court committed the petitioner to the Department of Health and Mental Hygiene for admission "when a bed becomes available." Aggrieved, the State noted an appeal to the Court of Special Appeals. It argued that the Circuit Court lacked the authority to modify the petitioner's sentence because the sentence was imposed pursuant to

---

"(a) In general.—If a court finds in a criminal case that a defendant has an alcohol or drug dependency, the court may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to treatment to the Department for inpatient, residential, or outpatient treatment.
* * * *
(h) Duration; extension; termination.—
(1) A commitment under this section shall be for at least 72 hours and not more than 1 year.
(2) On good cause shown by the Administration, the court may extend the time period for providing the necessary treatment services in increments of 6 months.
(3) Except during the first 72 hours after commitment, the Director or a designee of the Director may terminate the commitment if the Director or the designee determines that:
(i) Continued commitment is not in the best interest of the individual; or
(ii) The individual is no longer amenable to treatment.
(i) Release.—When an individual is to be released from a commitment under this section, the Director or the Director's designee shall consult with the court to determine if the individual is to be returned to the court.
* * * *
(l) Credit against sentence.—Any time served by a criminal defendant held for evaluation or committed for treatment shall be credited against the sentence imposed by the court."

§ 643B(c), which is a mandatory provision, and also because the motion for reconsideration was filed untimely under Maryland Rule 4-345(b),[4] more than ninety days after the sentence was initially imposed. It requested, therefore, that the intermediate appellate court vacate the Circuit Court's modified order and reinstate the original sentence.

The petitioner moved to dismiss the appeal on two grounds. He argued that the State does not have a common law right of appeal, submitting that any common law right to appeal criminal sentences the State may have had was abrogated and limited by § 12-302 to cases in which the trial judge fails to impose the statutorily mandated sentence. The petitioner maintained that there was no violation of the requirement of imposing the statutorily mandated sentence in his case. He reasoned that his sentence pursuant to § 643B(c) was not mandatory and, alternatively, that, in any event, the Circuit Court technically did not fail to impose the mandated sentence because it initially sentenced him as § 643B(c) directed.

Important to the State's position is this Court's decision in *Cardinell, supra.* There, we held that the State enjoys a common law right to appeal an allegedly illegal sentence. 335 Md. at 386-88, 644 A.2d at 13-14. In the alternative, the State relies on § 12-302(c)(2), which, as we have seen, permits the State to appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically

---

**4.** Maryland Rule 4-345 (Sentencing Revisory power of court) provides in relevant part:

"(a) Illegal sentence. The court may correct an illegal sentence at any time.

(b) Modification or reduction—Time for. The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition

(1) in the District Court, if an appeal has not been perfected, and

(2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity. . . .

\* \* \* \*

(c) Open court hearing. The court may modify, reduce, correct, or vacate a sentence only on the record after notice to the parties and an opportunity to be heard."

mandated by the Code, maintaining that it expressly authorizes its appeal.

Prior to any proceedings in the intermediate appellate court, we granted the Petition for Writ of Certiorari filed by the petitioner, to consider the correctness of both the decision in *Cardinell* and the judgment of the Circuit Court.

## II.

As much of the controversy in this case and the reason we granted certiorari can be traced to this Court's decision in *Cardinell*, it is appropriate that we begin with that decision.

Laura Beth Cardinell entered, in the Circuit Court for Garrett County, a plea of guilty to one count of distribution of cocaine and two counts of possession of cocaine, for which the court sentenced her to three years in prison. Cardinell timely filed, pursuant to Maryland Rule 4–345, a motion for revision of her sentence, which the court denied. Nearly seven months after sentencing, Cardinell filed a "supplemental" motion for revision of the sentence. The court granted this motion, suspending the balance of Cardinell's sentence and placing her on supervised probation instead. Apparently unaware of the court's action, the State, two days later, filed an answer opposing Cardinell's motion, which was untimely under Maryland Rule 4–345, and arguing that the court had no jurisdiction to entertain, or to act on, the motion.

The State timely filed an appeal to the Court of Special Appeals. That court held, among other things, that the trial court acted without authority and, therefore, in excess of its jurisdiction, and that the State was entitled to appeal. *State v. Cardinell*, 90 Md.App. 453, 458, 601 A.2d 1123, 1125–26 (1992). It vacated the Circuit Court order modifying Cardinell's sentence. *Id.* at 461, 601 A.2d at 1126. We granted Cardinell's Petition for Writ of Certiorari to consider whether the intermediate appellate court erred in holding that the State retained a right to appeal the lower court's order despite the clear language of § 12–302(c)(2). In a 4–3 decision, we answered that the court did not err. *Cardinell v. State*, 335 Md. at 383, 644 A.2d at 11–12.

As an initial matter, the *Cardinell* majority noted that "the [trial] court was clearly without authority to modify or reduce the sentence when it did so" because the so-called "supplemental" motion was not submitted within the 90–day period prescribed by Maryland Rule 4–345. *Id.* at 386, 644 A.2d at 13. The Court next considered the State's authority to appeal the trial court's order. The Court agreed with the conclusion of the Court of Special Appeals that the appeal was permitted pursuant to common law principles.[5] *Id.* at 387–88, 644 A.2d at 14. It rejected, however, the intermediate appellate court's notion that the State's common law right to appeal was codified in § 12–302(c)(2) or that § 12–302(c)(2) represented the sum total of the State's right to appeal a criminal judgment. *Id.* Instead, the Court concluded that, in enacting § 12–302, the Legislature sought "to codify the State's right to appeal in certain circumstances, but not to strip the State of rights already established by common law." *Id.* at 385, 644 A.2d at 13. In support of this conclusion, the Court reviewed *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974) (holding a trial judge exceeded his authority when he suspended a statutorily mandated sentence), in which the

---

5. A divided panel of the Court of Special Appeals concluded that the State's appeal of the Circuit Court's modification of Cardinell's sentence was authorized by § 12–302(c)(2). To reach this conclusion, it surmised that the Legislature did not intend for § 12–302(c)(2) "to deprive the state of the important and long-standing common law right to appeal when a court has exceeded its power" and, therefore, that the Legislature meant to codify that right in § 12–302(c)(2). *See State v. Cardinell,* 90 Md.App. 453, 458–60, 601 A.2d 1123, 1125 (1992). More particularly, as relates to the facts of the case, aware that 12–302(c)(2) only authorizes the State to appeal criminal sentences "if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code," the majority of the panel reasoned that the rules promulgated by this Court have the force of law, that the trial court acted in violation of Maryland Rule 4–345 and, therefore, that the modified sentence was contrary to the Code. *See id.* This Court disagreed with that approach, *Cardinell v. State,* 335 Md. 381, 387, 644 A.2d 11, 13 (1994), concluding, instead, that, in § 12–302(c)(2), the Legislature used the word "Code" in its ordinary significance and, thus, that the State's appeal could not be based on a mere violation of the Maryland Rules. *See id.* at 387, 644 A.2d at 14.

historical development of the right to appeal was traced. From that review, it was satisfied that, "at least up to the time of *Sonner*, the common law right of the state to appeal from an action of the lower court that was outside the court's jurisdiction remained intact." *Id.* at 391, 644 A.2d at 20.

The Court next considered whether the recodification of the laws governing appeals had abolished the State's common law right of appeal. Concluding that there was "no indication that the legislature intended to change the meaning of the law . . ." when it recodified those laws, *id.* at 394, 644 A.2d at 22, it reasoned that recodification of statutes is presumed to be for the purpose of clarity rather than to change their meaning.[6] Accordingly, despite the clear language of § 12-302, the Court held that the State's appeal was authorized under common law principles.

As noted, the *Cardinell* Court was sharply divided. In dissent, Judge Eldridge, writing for himself and two other judges, challenged the majority's conclusion that the State's common law right of appeal was well established, unequivocally stating, "[T]oday, there is no common law right to appeal." *Id.* at 398, 644 A.2d at 19. He also complained that the majority holding ran afoul of numerous of our cases, which have limited the State's right of appeal to constitutional or statutory grounds.[7] *Id.* at 400-01, 644 A.2d at 20-21. Judge Eldridge further articulated the concern that the majority's

---

6.  In doing so, the Court invoked the majority rule of statutory construction, which also recognizes that "sometimes the recodification process does result in a change in the law." *Id.* at 407, 644 A.2d at 24.

7.  *See, e.g., Howard County v. JJM, Inc.,* 301 Md. 256, 261, 482 A.2d 908, 910 (1984) ("the right of appeal is wholly statutory. Therefore, the General Assembly must expressly grant such a right."); *State v. Bailey,* 289 Md. 143, 147, 422 A.2d 1021, 1024 (1980) (the right to appeal "in either a civil or criminal case, must find its source in an act of the legislature"); *Jones v. State,* 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984) ("Under Maryland law the State's right to appeal in a criminal case is limited; it may do so only when authorized by statute."); *Lohss and Sprenkle v. State,* 272 Md. 113, 116, 321 A.2d 534, 536-537 (1974) ("Our consideration of the question presented here necessarily commences with a recognition of the principle that in Maryland, appellate

recognition of a common law right of appeal when the General Assembly had already specifically addressed the point may have violated the constitutional separation of powers principle. *Id.* at 401, 644 A.2d at 21.

---

jurisdiction is dependent upon a statutory grant of power.") (citations omitted); *see also Cubbage v. State,* 304 Md. 237, 241, 498 A.2d 632, 634 (1985) ("In Maryland, the right to appeal a criminal conviction is statutory . . ."); *Estep v. Estep,* 285 Md. 416, 422, 404 A.2d 1040, 1043 (1979) ("It being established that the jurisdiction of the appellate courts of this State 'is at this time delimited by statute,' . . . we look to the pertinent enactment to determine the scope of the court['s] . . . basic authority to act"); *Smith v. Taylor,* 285 Md. 143, 146, 400 A.2d 1130, 1132 (1979) ("The basis of appellate review in this State in both civil and criminal cases is delineated by statute"); *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 90, 394 A.2d 801, 803 (1978) ("the appellate jurisdiction of the courts of this State in both civil actions and criminal causes is at this time delimited by statute"); *Jolley v. State,* 282 Md. 353, 355, 384 A.2d 91, 93 (1978) ("Appellate jurisdiction in both civil actions and criminal causes is dependent upon a statutory grant of power"); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A.2d 55, 64 (1975) ("An appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute"); *Mace Produce v. State's Attorney,* 251 Md. 503, 508, 248 A.2d 346, 350 (1968) (" The right to take an appeal is entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute' ") (quoting *Subsequent Injury Fund v. Pack,* 250 Md. 306, 309, 242 A.2d 506, 509 (1968)); *Woodell v. State,* 223 Md. 89, 93, 162 A.2d 468, 471 (1960) ("the right of appeal is a creature of the statute"); *Johnson v. Board of Zoning Appeals,* 196 Md. 400, 406, 76 A.2d 736, 738 (1950) ("It is, of course, an accepted principle that the Court of Appeals will not entertain an appeal except when prescribed by law, and before it undertakes to review the proceedings of a subordinate tribunal, the authority must be shown"); *Amer. Bank Stationery Co. v. State,* 196 Md. 22, 28–29, 75 A.2d 86, 88 (1950) (" 'Where a statutory right of appeal is granted, that remedy is exclusive,' " quoting *Anne Arundel County v. Snyder,* 186 Md. 342, 348, 46 A.2d 689, 692 (1946)). *See also, e.g., State v. Anderson,* 320 Md. 17, 25, 575 A.2d 1227, 1231 (1990); *Harper v. State,* 312 Md. 396, 402–407, 540 A.2d 124, 127–129 (1988); *Clark v. Elza,* 286 Md. 208, 211–212, 406 A.2d 922, 924 (1979); *Eastgate Associates v. Apper,* 276 Md. 698, 700–701, 350 A.2d 661, 663 (1976); *Eisel v. Howell,* 220 Md. 584, 587, 155 A.2d 509, 511 (1959); *Switkes v. John McShain,* 202 @Md. 340, 343–345, 96 A.2d 617, 618–620 (1953); *State v. Barshack,* 197 Md. 543, 80 A.2d 32 (1951); *State v. Rosen,* 181 Md. 167, 169, 28 A.2d 829, 829 (1942); *Brooks v. Sprague,* 157 Md. 160, 164, 145 A. 375, 377 (1929); *Hendrickson v. Standard Oil Co.,* 126 Md. 577, 581, 95 A. 153, 155 (1915); *Peoples v. Ault,* 117 Md. 631, 635, 84 A. 60, 61 (1912); *Dillon v. Conn. Mutual Life Ins. Co.,* 44 Md. 386, 394–395 (1876); *Barth v. Rosenfeld,* 36 Md. 604, 615 (1872).

The dissenters also did not accept the majority's conclusion that recognition of a common law right of appeal on the part of the State was consistent with the language of § 12–302(c)(2). Moreover, noting the complete absence from the *Sonner* opinion of any reference to the State's having a "common law right of appeal," they, speaking through Judge Eldridge, disagreed with the majority's characterization of that case. *Id.* at 405, 644 A.2d at 23. Rather than standing for the continued vitality of a common law right of appeal, they submitted, *Sonner* was a statutory interpretation case, which held only that the recodification of the appeals statutes in 1957 did not eliminate the State's right to appeal from an illegal sentence of the type specifically involved in that case.[8] *Id.* at 406, 644 A.2d at 23.

Judge Eldridge also discussed the significance of the subsequent amendment of the appeals statutes in 1976 as well as the cases interpreting them. As to the former, he pointed out:

> "Although Ch. 399 of the Acts of 1957, as construed in *Sonner,* did not restrict the State's right to appeal from an illegal sentence, the General Assembly clearly limited that right [ ] when it enacted Ch. 49 of the Acts of 1976."

*Id.* at 406–07, 644 A.2d at 23. Judge Eldridge then summarized the pertinent sections of the cases, which the majority acknowledged, but dismissed as "dicta," as follows:

> "As we pointed out in *Telak v. State, supra,* 315 Md. at 572–73, 556 A.2d at 227, 'with regard to circuit court criminal court cases, ... § 12–302(c)(2) of the courts and Judicial Proceedings Article, as originally enacted, did depart from former Art. 5, § 14. Section 12–302(c) provided: 'In a criminal case, the state may appeal *only* from a final

---

8. As Judge Eldridge noted, prior to the enactment of Ch. 399 of the Acts of 1957, the pertinent statute afforded a general right of appeal to all parties to a criminal appeal. *See id.* at 404–05, 644 A.2d at 22–23 (discussing the evolution of the statutory provisions pertaining to criminal appeals). Chapter 399 repealed this right, however, and replaced it with a broad right to appeal that only extended to defendants. The state's right to appeal, by contrast, was limited to specific enumerated circumstances.

judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition in a criminal case.' (Emphasis added).

The Revisor's Note to § 12–302(c), referring to the omission of certain language from former Art. 5, § 14, stated that 'the state may only appeal in the limited situations set forth in the section. . . .' The enactment of the original § 12–302(c), as pointed out for the Court by Judge Rodowsky in *State v. Hannah, supra,* 307 Md. at 399, 514 A.2d at 20, 'placed in serious question, if it did not completely eliminate, the State's right to appeal an illegal sentence as recognized in the earlier cases and reiterated in *Sonner.*' Later, in *Shilling v. State, supra,* 320 Md. at 294, 577 A.2d at 86, in an opinion by Judge Cole, we flatly took the position that "section 12–302, as originally enacted, departed from Art. 5, § 14 by virtually eliminating the State's right to appeal an illegal sentence as documented in *Sonner.*"

*Id.* at 407, 644 A.2d at 23–24.

In light of these cases, Judge Eldridge concluded, the 1976 amendment of § 12–302(c) was an "obvious response to the *Sonner* case and the very restrictive language in § 12–302(c)," demonstrating a clear legislative intention "to extend the State's right of appeal to the situation where the trial judge failed to impose a sentence specifically mandated by the Code" and reflecting the legislature's belief that, prior to the amendment, the State did not possess the right to appeal an illegal sentence of the type involved in *Sonner. Id.* at 408, 644 A.2d at 24. He further concluded that "the majority's view violate[d] the principle that, where a statute expressly allows a particular action under specified circumstances, it is a reasonable inference that the legislature intended not to allow the action under other circumstances." *Id.* at 409, 644 A.2d at 25.

Finally, closely scrutinizing the majority's historical review of the case law, Judge Eldridge noted that none of the cases the majority relied upon supported the existence of a common law right of appeal independent of a statutory basis. Specifically rejected was the majority's reliance on selected portions

of *Rayner v. State*, 52 Md. 368, 374 (1879) and *Montgomery County v. McNeece*, 311 Md. 194, 198–199, 533 A.2d 671, 673 (1987), which the majority had maintained demonstrated "that, even absent statute, an appellate court may entertain an appeal where it is contended that a lower court acted in excess of its jurisdiction." *Id.* at 415–16, 644 A.2d at 28 (quoting *McNeece*, 311 Md. at 198–99, 533 A.2d at 673). Judge Eldridge pointed out that those cases, and the cases they cited, were statutory construction cases and did not stand for the proposition that a common law right of appeal could be invoked whenever a lower court acts in excess of its jurisdiction. *Id.* at 416, 644 A.2d at 28. Those cases, he explained, involved a narrow rule authorizing an appeal when a Circuit Court acting pursuant to a "special limited statutory jurisdiction" exceeds such jurisdiction. *Id.* at 416, 644 A.2d at 28. Thus, unpersuaded that common law principles authorized the State's appeal, but agreeing that the appeal also was not authorized by § 12–302(c), the dissenters would have vacated the intermediate appellate court's judgment and dismissed the State's appeal. *Id.* at 426, 644 A.2d at 33.

### III.

■ The petitioner argues that *Cardinell* should be overruled because, to the extent a common law right to appeal criminal sentences ever existed, the Legislature abrogated that right when it enacted § 12–302(c). We agree. As Judge Eldridge in dissent in *Cardinell* correctly observed, the common law right of appeal "discovered" by the *Cardinell* majority, *see id.* at 425, 644 A.2d at 33, contravened numerous prior decisions recognizing that, except as may be constitutionally authorized, the right of appeal is entirely dependent upon statutes.

Recent cases construing the appeals statutes confirm our conclusion. For example, in *Prince George's County v. Beretta U.S.A. Corp.*, 358 Md. 166, 747 A.2d 647 (2000), this Court dismissed an appeal from a Circuit Court's judgment reviewing a decision of the Prince Georges Human Relations Commission. The Court reasoned that neither the specific statuto-

ry provisions at issue nor any other provision of law expressly authorized the appeal. The Court stated: "Although at an early period the common law recognized the availability of writs of error under some circumstances, questions of appealability have today become entirely governed by statutes." *Id.* at 173, 747 A.2d at 651. *See also Gisriel v. Ocean City Board Elections,* 345 Md. 477, 489, 693 A.2d 757, 763 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998) (explaining that the enactment of § 12–301 abrogated prior law and holding that an appeal was not authorized under the broad, general grant of the right to appeal contained in § 12–301 because a more specific provision applied [9]).

That the invocation of common law principles in an area specifically addressed by the General Assembly might violate the constitutional separation of powers principle, an issue raised by the *Cardinell* dissent, remains a valid concern. Instructive in this respect is *Robinson v. State,* 353 Md. 683, 728 A.2d 698 (1999), in which we recently considered whether the 1996 enactment of Md.Code (1957, 1996 Repl.Vol.) Art. 27 §§ 12, 12A, and 12A–1, abrogated common law assault. We concluded that the statutes did abrogate the common law. Our reasoning was as follows:

"To be sure, the language of the 1996 assault statutes contain no specific words of repeal or abrogation, nor is there any conflict between those statutes and the common law. We have determined, however, that the statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject."

*Id.* at 694, 728 A.2d at 703. In support of this conclusion, we noted that, in contrast to other criminal statutes held not to abrogate the common law, the assault statutes "repealed and

---

9. The provision the Court found to be applicable was § 12–302(a), which provides: "Unless a right to appeal is expressly granted by law, section 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of its appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a legislative body."

replaced prior statutory law while incorporating the common law." *Id.* at 701, 728 A.2d at 707.

▉ The rationale of *Robinson* applies with equal force to the case *sub judice.* Although the appeals statutes also contain no specific words of abrogation, like the assault statutes at issue in *Robinson,* the appeals statutes repealed and replaced the prior statutory scheme.[10] In addition, the structure of the appeals statutes, *i.e.,* conferring a broad, general grant of appeal subject to enumerated limitations, further suggests that they are meant to represent the entire subject matter of the law of appeals.[11]

## IV.

▉ Today, we announce that the State does not, under Maryland law, enjoy a common law right to appeal an allegedly illegal criminal sentence, thus, overruling our prior decision in *Cardinell.* In reaching this conclusion, we acknowledge that, ordinarily, under the doctrine of *stare decisis,* a court's previous decisions should not be lightly set aside. As we explained in *Townsend v. Bethlehem–Fairfield Shipyard, Inc.,* 186 Md. 406, 417, 47 A.2d 365, 370 (1946):

"It is a well recognized and valuable doctrine that decisions, once made on a question involved in a case before a court, should not thereafter be lightly disturbed or set aside (except by a higher court). This is because it is advisable and necessary that the law should be fixed and established as far as possible, and the people guided in their personal

10. As noted, Chapter 399, Section 4 of the Acts of 1957 repealed all of former Article 5 of the Code. *See generally Cardinell,* 335 Md. at 404–05, 644 A.2d at 22–23.

11. In addition to the limits placed on criminal appeals by the State, *see* § 12–302(c), § 12–302 enumerates other limits on appeals including, among others, appeals from Circuit Courts exercising appellate jurisdiction in reviewing decisions of District Courts, administrative agencies, and legislative bodies, *see* § 12–302(a), decisions of the Circuit Courts sitting in banc, pursuant to Article IV § 22 of the Constitution, *see* § 12–302(d), and orders of a sentence review panel of circuit court under Article 27 §§ 645JA through 645JG of the Code. *See* § 12–302(f).

and business dealings by established conclusions, not subject to change because some other judge or judges think differently."

▮ Nevertheless, the rule of *stare decisis* is not an absolute. The United States Supreme Court has stated that "it is common wisdom that the rule of *stare decisis* is not an 'inexorable command.'" *Planned Parenthood v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992). This Court also has recognized that "it is sometimes advisable to correct a decision or decisions wrongly made in the first instance if it is found that the decision is clearly wrong and contrary to other established principles." *Townsend,* 186 Md. at 417, 47 A.2d at 370; *see also Hearst Corp. v. State Dep't of Assessments & Taxation,* 269 Md. 625, 643–44, 308 A.2d 679, 689 (1973) ("The doctrine of *stare decisis,* important as it is, is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life." (quoting *White v. King,* 244 Md. 348, 354, 223 A.2d 763, 767 (1966))); *Greenwood v. Greenwood,* 28 Md. 369, 381 (1868) ("Previous decisions of this court should not be disturbed ... unless it is plainly seen that glaring injustice has been done or some egregious blunder committed.").

Cognizant as we are of the important policies behind the doctrine of *stare decisis,* we nonetheless are satisfied that our decision today is the right one. Never before *Cardinell,* or since, has this Court recognized the common law right to appeal discovered by the *Cardinell* majority. We are convinced that *Cardinell* was wrongly decided. Accordingly, today's ruling corrects that error and establishes once and for all that there is now no common law right of appeal under Maryland law.

## V.

▮ Turning now to the question of whether the State in the case *sub judice* has a direct right of appeal pursuant to § 12–302(c)(2), we hold that it does. Section 12–302(c)(2)

provides that in a criminal case "[t]he State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code." The State argues that the petitioner's initial § 643B(c) sentence was a mandatory sentence and not subject to modification. Therefore, it submits that the Circuit Court had no authority to modify the sentence by committing the petitioner to the Department of Health and Mental Hygiene, pursuant to § 8–507 of the Health–General Article. In the alternative, even if the petitioner's sentence could have been modified by ordering him to treatment under the Health Article, the State contends that the Circuit Court lacked the authority to modify the sentence because more than 90 days had passed after sentencing and a modification to a sentence under these circumstances is untimely under Maryland Rule 4–345(b).

The petitioner retorts, as we have seen, that his sentence under § 643B(c) was not mandatory and, in the alternative, that the Circuit Court technically did not fail to impose it because the court originally sentenced him as § 643B(c) required.

▮ We agree with the State that the Circuit Court lacked authority to modify the petitioner's sentence. There simply is no merit in the petitioner's assertion that the original sentence was not mandatory. The petitioner was sentenced as a repeat violent offender pursuant to § 643B(c). Our cases make clear that once the predicate requirements for imposition of the § 643B(c) sentencing provisions have been established, a sentencing court has no choice but to impose the mandatory minimum penalty prescribed. *See Jones v. State,* 336 Md. 255, 262, 647 A.2d 1204, 1207 (1994) (third crime of violence conviction); *State v. Taylor,* 329 Md. 671, 675, 621 A.2d 424, 426 (1993) (same); *Loveday v. State,* 296 Md. 226, 236–37, 462 A.2d 58, 63 (1983) (same).

▮ Whether a § 643B(c) sentence may be modified by commitment pursuant to § 8–507 is a matter of statutory construction, the guiding principles of which are well-settled. Section 643B(c) provides:

"(c) Third conviction of crime of violence.—Except as provided in subsections (f) and (g) of this section, any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, *shall be sentenced*, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. *The court may not suspend all or part of the mandatory 25–year sentence required under this subsection*, and the person shall not be eligible for parole except in accordance with the provisions of § 4–305 of the Correctional Services Article. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion."

(Emphasis supplied). At the outset, in that regard, we see nothing in the language of § 643B(c) to suggest that persons sentenced under the statute also are eligible for commitment pursuant to § 8–507.

This Court has stated many times "that the cardinal rule of statutory construction is to ascertain and effectuate legislative intention." *See Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *see also Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 451, (1994); *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 755 (1993); *State of Maryland v. Crescent Jaycees Foundation, Inc.*, 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *Privette v. State*, 320 Md. 738, 744, 580 A.2d 188, 191 (1990); *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474 (1988). Where the "language of the statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis is ordinarily required." *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *accord Prince George's County v. Vieira*, 340 Md. 651, 658, 667 A.2d 898, 901 (1995); *State v. Thompson*, 332 Md. 1, 7, 629

A.2d 731 (1993); *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991); *Collins v. State,* 321 Md. 103, 107, 581 A.2d 426, 428 (1990), *appeal after remand,* 326 Md. 423, 605 A.2d 130 (1992).

▮▮▮ Applying these rules to § 643B(c) can result in but one conclusion: it was not intended that persons sentenced under the statute also would be eligible for commitment under § 8–507. Section 643B(c)'s sentencing provisions, by their terms, are unambiguously mandatory. Section 643B is entitled "Mandatory sentences for crimes of violence." Section 643B(c) directs that repeat violent offenders "shall" be sentenced as provided. When the Legislature commands that something be done, using words such as "shall" or "must" rather than "may" or "should," the obligation to comply with the statute or rule is mandatory. *See Thanos v. State,* 332 Md. 511, 522, 632 A.2d 768, 773 (1993), in which, quoting *Tucker v. State,* 89 Md.App. 295, 298, 598 A.2d 479 (1991), we explained:

> " 'When a legislative body commands that something be done, using words such as "shall" or "must," rather than "may" or "should," we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed.' "

Moreover, the language of the section specifically directs that courts may not suspend "all or part" of such sentences, which the section describes as "mandatory" and "required." Finally, § 643B(c) makes no reference to alternate sentencing or commitment pursuant to the Health–General Article.

▮▮▮ On its face, the plain language of § 643B(c) clearly leads to the conclusion that it was not intended that persons sentenced under the statute also would be eligible for sentencing under § 8–507. This reading of § 643B(c) is consistent with its purpose to provide warnings to those persons who have been convicted of criminal offenses that the commission of future offenses will be more harshly punished and to impose an extended period of incarceration upon those who fail to

heed that warning so as to protect society from violent recidivist offenders. *See Jones v. State, supra,* 336 Md. at 264, 647 A.2d at 1208.

In further support of this position, the State relies on *State v. Wheeler,* 118 Md.App. 142, 701 A.2d 1221 (1997), in which the Court of Special Appeals considered the applicability of § 8–507 to the mandatory sentence provisions of Article 27 § 286(f)(3)(i), pertaining to the distribution of large quantities of drugs. In resolving that issue, the intermediate appellate court stated, "[I]n order to commit a defendant to drug treatment pursuant to the Health General Article prior to the imposition of the mandatory sentence under § 286(c), a statutory provision must give the trial court discretion to do so." 118 Md.App. at 153, 701 A.2d at 1227. The court noted that unlike § 286(c)(3), which specifically gives trial courts discretion to utilize the Health General Article for second time drug distribution offenders, § 286(f) does not contain a similar provision. The Court held:

> "Based on the plain language of section 286(f) and a comparison to section 286(c)(3) ... we hold that the trial court does not have discretion to sentence a defendant, who violated section 286(f), to drug treatment prior to the serving of the mandatory portion of the sentence."

*Id.* We agree that the *Wheeler* rationale applies here and that, like § 286(f), § 643(B)(c) does not authorize the trial court to modify the sentences of persons sentenced under that section by committing them to a treatment facility pursuant to § 8–507.

We also reject the petitioner's alternate argument that because the Circuit Court originally sentenced him as § 643B(c) requires, the court did not fail to impose the sentence specifically mandated by the Code. This argument is exceedingly technical and, in any event, our cases make clear that when a trial court grants a motion to revise a criminal sentence, it resurrects the penalty portion of a judgment, thus, the new sentence represents the actual disposition of the case and the modified sentence becomes the appealable order. *See*

*Webster v. State,* 359 Md. 465, 477, 754 A.2d 1004, 1011 (2000); *see generally Greco v. State,* 347 Md. 423, 432–33, 701 A.2d 419, 423 (1997); *Chertkov v. State,* 335 Md. 161, 168–69, 642 A.2d 232, 235–36 (1994); *Telak v. State,* 315 Md. 568, 575, 556 A.2d 225, 228 (1989); *Johnson v. State,* 274 Md. 29, 41, 333 A.2d 37, 43–44 (1975).

In sum, the Court agrees with the petitioner that the State does not enjoy a common law right to appeal criminal sentences. Thus, our decision in *Cardinell* is overturned. We disagree, however, with the proposition that the State does not have a direct right of appeal under § 12–302 merely because the trial court originally imposed the sentence provided by Article 27 § 643B(c). The sentencing provisions of § 643B(c) obviously are mandatory, thus, the petitioner was not eligible for treatment under § 8–507 of the Health General Article where he previously had been properly sentenced under § 643B(c). By modifying the petitioner's mandatory sentence, the trial court failed to impose the sentence specifically mandated by the Code; thus, the State had a right of direct appeal under § 12–302(c)(2).[12]

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE PAID ONE HALF BY PRINCE GEORGE'S COUNTY AND ONE HALF BY THE PETITIONER.

WILNER and HARRELL, JJ., Concur.

Concurring opinion by WILNER, J., in which HARRELL, J., joins.

I join in the Court's opinion but write separately only to express my view that the Court of Special Appeals got it right

---

12. Because we conclude that the State has a direct right of appeal based on the fact that the petitioner's sentence was mandatory, we do not reach, or address, its alternate argument that, even if treatment under § 8–507 were available to the petitioner, the State still had a direct right of appeal under § 12–302(c)(2) because the Circuit Court lacked the authority to grant the petitioner's motion, which was untimely under Maryland Rule 4–345(b).

in *State v. Cardinell,* 90 Md.App. 453, 601 A.2d 1123 (1992) in defining the word "Code" in § 12–302(c)(2) to include the Maryland Rules, thereby authorizing a State appeal when a circuit court exceeds the limitation on its revisory authority under Rule 4–345. The Court reserves on that question, see footnote 12 of the majority opinion, but, for the guidance of the trial courts, I would not leave it hanging. The issue is an important one. It is before us in this case, and we should address it. Trial judges know that, absent a showing of fraud, mistake, or irregularity, they have no authority under Rule 4–345 to modify a lawful sentence except upon a motion filed within ninety days following imposition of the sentence. What must be made clear is, that, if they do make such a modification, in contravention of that rule, as was done both here and in *Cardinell,* the State may, and likely will, appeal, and that, upon such an appeal, absent some circumstance that I cannot now envision, the modification will be vacated.

Judge HARRELL has authorized me to state that he joins in this concurrence.