55 A.3d 496

CITIZENS AGAINST SLOTS AT the MALL, et al.

v.

PPE CASINO RESORTS MARYLAND, LLC, et al.

No. 154, Sept. Term, 2009.

Court of Appeals of Maryland.

Oct. 24, 2012.

Michael D. Berman (Alan M. Rifkin and M. Celeste Bruce of Rifkin, Livingston, Levitan & Silver, LLC, Annapolis, MD; Bruce L. Marcus of MarcusBonsib, LLC, Greenbelt, MD; Timothy F. Maloney of Joseph, Greenwald & Laake, PA, Greenbelt, MD), all on brief, for appellants/cross-appellees.

Anthony Herman (Alan A. Pemberton, Stephen P. Anthony, Virginia M. Rosado Desilets, Scott A. Freling and Shelli Calland of Covington & Burling LLP, Washington, DC; Andrew C. White and Erin Murphy Ehman of Silverman, Thompson, Slutkin & White, LLC, Baltimore, MD), all on brief, for appellees/cross-appellants.

Kathleen E. Wherthey, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and Jeffrey L. Darsie, Asst. Atty. Gen., Baltimore, MD; James C. Praley of Lessans, Praley & McCormick, P.A., Glen Burnie), all on brief, for cross-appellees.

Jonathan A. Hodgson, Co. Atty., Michael G. Comeau, Asst. Co. Atty., Annapolis, Robert S. McCord, Co. Atty., Bel Air, Margaret Ann Nolan, Co. Solicitor, Columbia, Marc P. Hansen, Acting Co. Atty., Rockville, John E. Beverungen, Co. Atty., Towson, George Nilson, City Solicitor, Baltimore City Law Department, Baltimore, MD, for amicus curiae brief of Anne Arundel County, Maryland and Charter Counties.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

This is the latest in a series of opinions and orders by this Court involving the constitutional provision and the implementing legislation authorizing a limited number of "video lottery terminals," commonly known as "slot machines," at specified Maryland facilities, including a facility in the area of northern Anne Arundel County.[1] *See* Ch. 5 of the 2007 Special Session of the General Assembly proposing new Article XIX of the Maryland Constitution, ratified at the general

---

[1]. Prior opinions and orders involving the Anne Arundel County facility include *Stop Slots v. State Board of Elections*, 424 Md. 163, 34 A.3d 1164 (2012); *Citizens Against Slots v. PPE Casino*, 415 Md. 117, 999 A.2d 181 (2010); *Smigiel v. Franchot*, 410 Md. 302, 978 A.2d 687 (2009); *Laurel Racing v. Video Lottery*, 409 Md. 445, 975 A.2d 894 (2009); *Stop Slots v. Board of Elections*, 406 Md. 135, 956 A.2d 715 (2008); *Smigiel v. Franchot*, 403 Md. 637, 943 A.2d 1260 (2008).

election in November 2008; Ch. 4 of the 2007 Special Session of the General Assembly, codified in Maryland Code (1984, 2009 Repl.Vol., 2012 Supp.), §§ 9–1A–01 through 9–1A–36 of the State Government Article. *See also* Ch. 1 of the 2012 Second Special Session of the General Assembly, approved by the Governor August 15, 2012, which proposes an expansion of commercial gaming and which provides, *inter alia,* for a referendum on such expansion in November 2012, pursuant to Article XIX, § 1(e) of the Maryland Constitution.

The principal issues in these appeals are whether the Circuit Court's judgment was appealable and whether an Anne Arundel County zoning ordinance, authorizing video lottery facilities in certain areas of Anne Arundel County, was subject to referendum under § 308(a) of the Anne Arundel County Charter.[2] The zoning ordinance, which was Bill No. 82–09, authorized video lottery facilities as a "conditional use" in a

---

**2.** Section 308(a) of the Anne Arundel County Charter states (emphasis added):

"Sec. 308. The Referendum.

(a) **Scope of the Referendum.** The people of Anne Arundel County reserve to themselves the power known as "The Referendum," by petition to have submitted to the registered voters of the County, to approve or reject at the polls, any ordinance or part of any ordinance of the County Council. The referendum petition against any such ordinance shall be sufficient if signed by ten per centum of the qualified voters of the County calculated upon the whole number of votes cast in the County for Governor at the last preceding gubernatorial election. Such petition shall be filed with the Board of Supervisors of Elections of Anne Arundel County within forty-five days after the ordinance becomes law. If such a petition is filed as aforesaid, the ordinance or part thereof to be referred shall not take effect until thirty days after its approval by a majority of the qualified voters of the County voting thereon at the next ensuing election held for members of the House of Representatives of the United States; provided, however, that if more than one-half but less than the full number of signatures required to complete any referendum petition against such ordinance be filed within forty-five days from the date it becomes law, the time for the ordinance to take effect and the time for filing the remainder of signatures to complete the petition shall be extended for an additional thirty days with like effect. Any emergency ordinance shall remain in force from the date it becomes law notwithstanding the filing of such petition, but shall stand repealed thirty days after having been rejected by a majority of the qualified voters voting

"W-1 Industrial Park zoning district" and in a "Regional Commercial Complex" of Anne Arundel County. The authorized area under Bill No. 82-09 would encompass the particular area of northern Anne Arundel County where the video lottery facility was tentatively to be located.

The Circuit Court for Anne Arundel County in this case filed a judgment declaring "that Bill No. 82-09 is an interdependent and legally inseparable piece of an appropriation package for maintaining State and local government and, therefore, is not subject to referendum...." The Circuit Court, however, rejected all other challenges to a referendum on Bill No. 82-09. Both sides took appeals from the Circuit Court's judgment, and both filed in this Court petitions for writs of certiorari which we granted. *Citizens Against Slots v. PPE Casino*, 415 Md. 114, 999 A.2d 179 (2010).

On July 20, 2010, after the filing of briefs and oral argument, this Court issued an order which (1) denied a motion to dismiss the appeals, thereby holding that the Circuit Court's judgment was appealable, and (2) reversed the Circuit Court's judgment and remanded the case to that court with instructions to order that Bill No. 82-09 "be placed on the ballot at the November 2010 general election," in accordance with the referendum provisions of the Anne Arundel County Charter. *See Citizens Against Slots v. PPE Casino*, 415 Md. 117, 999 A.2d 181 (2010). This opinion gives the reasons for the Court's order.[3]

---

thereon. *No ordinance making any appropriation for current expense for maintaining the County government,* or for maintaining or aiding any public institution, not exceeding the next previous appropriation for the same purpose, *shall be subject to rejection or repeal under this section.* The increase in any such appropriation for maintaining the County government or for maintaining or aiding any public institution shall only take effect as in the case of other ordinances, and such increase, or any part thereof, specified in the petition may be referred to a vote of the people of the County upon petition as above provided."

**3.** It should be noted that the majority of the Anne Arundel County voters approved Bill No. 82-09 at the November 2010 election. Accordingly, the Bill is now part of the *Anne Arundel County Code.*

## I.

The constitutional amendment and implementing legislation authorizing video lottery facilities in various Maryland locations has been described in several recent opinions of this Court, and we shall not here repeat in detail what was set forth in those opinions. *See Stop Slots v. State Board of Elections,* 424 Md. 163, 34 A.3d 1164 (2012); *Smigiel v. Franchot,* 410 Md. 302, 978 A.2d 687 (2009); *Laurel Racing v. Video Lottery,* 409 Md. 445, 975 A.2d 894 (2009). Of particular importance in the present case are two provisions of Article XIX of the Maryland Constitution. They are Article XIX, § 1(c)(3)(i), authorizing a video lottery facility in "Anne Arundel County, within 2 miles of MD Route 295," and Article XIX, § 1(c)(5), stating that "[a] video lottery facility shall comply with all applicable planning and zoning laws of the local jurisdiction."

Prior to the enactment of Bill No. 82–09, video lottery facilities were not permitted uses under Anne Arundel County zoning law. On December 7, 2009, the Video Lottery Facility Location Commission "award[ed] a Video Lottery Operation License for 4,750 video lottery terminals to [appellee] PPE Casino Resorts Maryland, LLC, contingent on zoning approval." The license was for a video lottery facility "to be located at the intersection of Route 100 and Arundel Mills Boulevard, located within two miles of Route 295, at Arundel Mills Mall in Hanover, Maryland." Anne Arundel County Bill No. 82–09, permitting video lottery facilities in certain areas, including the above-described location at Arundel Mills Mall, was passed by the Anne Arundel County Council on December 21, 2009, and signed by the County Executive on December 22, 2009.

Upon the enactment of Bill No. 82–09, the appellant Citizens Against Slots at the Mall, along with others opposed to a video lottery facility at Arundel Mills Mall, began a petition drive to place Bill No. 82–09 on the ballot, pursuant to the referendum provisions in § 308(a) of the Anne Arundel County Charter.[4]

---

4. Hereafter in this opinion, the appellant and cross-appellee Citizens Against Slots at the Mall, and the other appellants and cross-appellees

*See* n. 2, *supra.* On February 4, 2010, the first group of petition signatures was filed with the Anne Arundel County Board of Elections. Also on February 4, 2010, counsel for PPE Casino Resorts wrote to the County Board of Elections, contending that Bill No. 82–09 "may not be submitted to a referendum under Section 308 of the Anne Arundel County" Charter because it is an "ordinance[ ] making an appropriation for the maintenance of the County government." Counsel for PPE Casino Resorts argued that, "because Bill 82–09 was enacted pursuant to a statewide initiative and because its rejection could undermine the implementation of that initiative, it may not be submitted to a public referendum at the County level." The Anne Arundel County Board of Elections, after being advised by its counsel that "Bill 82–09 addresses only zoning issues, [and] does not make any appropriation of funds," rejected the contentions of PPE Casino Resorts and decided that Bill No. 82–09 was subject to referendum under § 308 of the Anne Arundel County Charter. On April 1, 2010, the Anne Arundel County Board of Elections certified that enough valid signatures in favor of the referendum on Bill No. 82–09 had been filed with the Board and that Bill No. 82–09 "qualifies to be placed on the ballot for the 2010 Gubernatorial General Election ballot."

While the petition drive was taking place, the appellee PPE Casino Resorts, which opposed the referendum, along with other appellees opposed to the referendum, commenced the present action by filing in the Circuit Court for Anne Arundel County a complaint for a declaratory judgment against the Anne Arundel County Board of Elections, challenging the Board's review of the petitions and the signatures. Citizens Against Slots filed a motion to intervene, and the motion was granted. On April 7, 2010, after the Board of Elections' certification, PPE Casino Resorts filed a second amended complaint, and later a third amended complaint, seeking both

opposed to a video lottery facility at Arundel Mills Mall, will collectively be referred to as "Citizens Against Slots." The appellees and cross-appellants will collectively be referred to as "PPE Casino Resorts."

judicial review of the certification by the Anne Arundel County Board of Elections and a declaratory judgment. Also, the State Board of Elections was added as a defendant.

Hearings before the Circuit Court took place at various times during the latter part of May 2010 and early June 2010. PPE Casino Resorts argued that Bill No. 82–09 was not subject to a referendum under § 308(a) of the Anne Arundel County Charter because it was a component of an appropriation package, and § 308(a) stated: "No ordinance making any appropriation for current expense for maintaining the County government ... shall be subject to rejection or repeal under this section."[5] PPE Casino Resorts also claimed that the circulator's affidavit on the pages of the petition was defective. Finally, PPE Casino Resorts sought to introduce in the Circuit Court what it described as evidence of "fraud, misrepresentation, and forgery in the Petition and Petition signature-gathering process." Citizens Against Slots objected to the evidence, and the Circuit Court sustained the objection because the evidence was not presented to the administrative agency, *i.e.* the Anne Arundel County Board of Elections, and was not contained in the administrative record.

The Circuit Court on June 25, 2010, filed an extensive opinion and declaratory judgment dealing with the various issues raised by the parties. As previously mentioned, the Circuit Court held that Bill No. 82–09 was not subject to referendum because the Bill was "interdependent and legally inseparable from a larger appropriation package." The court explained:

> "The Maryland Education Trust Fund Act generates revenue for a constitutionally mandated purpose and will maintain State and local government. To further its purpose, it establishes the process for collecting and depositing revenue into a trust fund account. VLT [Video Lottery Terminals]

---

5. *See* n. 2, *supra.* The Maryland Constitution, in Article XVI, Section 2, contains a somewhat similar provision with regard to a "law enacted by the General Assembly," although the wording of the provision is not the same.

facilities are a necessary element to this revenue raising measure. The State Gaming Commission awarded a VLT license to PPE, conditioned on the location receiving the proper zoning. Subsequent to the preliminary award, the County Council passed Bill 82–09, specifically conditioning the VLT use on a property being in compliance with the location requirements specified under Article XIX. If Bill 82–09 was subject to referendum, the constitutional and legislative purposes set forth under Article XIX and the Maryland Education Trust Fund Act would be delayed and thwarted, if not fatally undermined. Therefore, given Bill 82–09's interdependent and legally inseparable nature from a constitutionally mandated appropriation law to maintain public education, Bill 82–09 is not subject to referendum."

The principal authority relied upon by the Circuit Court was *Kelly v. Marylanders For Sports Sanity,* 310 Md. 437, 530 A.2d 245 (1987).

Citizens Against Slots filed a notice of appeal to the Court of Special Appeals on June 28, 2010, and filed a "precautionary" notice of "direct appeal" to the Court of Appeals on June 30, 2010.[6] PPE Casino Resorts filed timely notices of cross-appeal, and both sides filed certiorari petitions which this Court granted. PPE Casino Resorts also filed a motion to dismiss Citizens Against Slots' appeal.

## II.

PPE Casino Resorts' motion to dismiss is based on Maryland Code (1974, 2006 Repl.Vol., 2012 Supp.), § 12–302(a) of

---

**6.** Maryland Rule 8–202(a) provides in relevant part as follows: "**Generally.** Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."

Title 6 of the Election Law Article of the Code, concerning "Petitions," in § 6–209 relating to judicial review, does not refer to "appeals." *See* Maryland Code (2002, 2010 Repl.Vol.), § 6–209 of the Election Law Article. Title 12 of the Election Law Article in §§ 12–202 and 12–203, authorizing judicial review of decisions relating to an election where no other adequate remedy is available, provides for direct appeals to the Court of Appeals within five days of a circuit court's decision.

the Courts and Judicial Proceedings Article, which provides that the general appeals statute (§ 12–301of the Courts and Judicial Proceedings Article) does not apply to certain types of cases and that the right to appeal in such cases must be granted by some other law. Section 12–302(a) states:

"(a) *District Court, administrative agency, or local legislative body.*—Unless a right to appeal is expressly granted by law, § 12–301 of this subtitle does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body."

The phrase in § 12–302(a), referring to "the exercise of appellate jurisdiction in reviewing the decision of . . . an administrative agency, or a local legislative body," has been construed to mean "ordinary statutory judicial review of adjudicatory decisions by administrative agencies and local legislative bodies," *Gisriel v. Ocean City Elections Board,* 345 Md. 477, 492, 693 A.2d 757, 765 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998). For discussions of § 12–302(a), including its scope and history, *see, e.g., Dvorak v. Anne Arundel County Ethics Commission,* 400 Md. 446, 450–459, 929 A.2d 185, 187–193 (2007); *Murrell v. Baltimore,* 376 Md. 170, 184–196, 829 A.2d 548, 556–564 (2003); *Kant v. Montgomery County,* 365 Md. 269, 272–279, 778 A.2d 384, 386–389 (2001); *Prince George's County v. Beretta,* 358 Md. 166, 173–183, 747 A.2d 647, 651–656 (2000); *Gisriel v. Ocean City Elections Board, supra,* 345 Md. at 485–500, 693 A.2d at 761–768; *Cardinell v. State,* 335 Md. 381, 415–424, 644 A.2d 11, 28–32 (1994) (dissenting opinion, which was later adopted by the Court in *State v. Green,* 367 Md. 61, 75–79, 785 A.2d 1275, 1283–1285 (2001)).

PPE Casino Resorts argued that the present case, involving judicial review of a decision by an administrative agency, namely the Anne Arundel County Board of Elections, fell within § 12–302(a). Consequently, the argument continued, § 12–301 of the Courts and Judicial Proceedings Article did not authorize an appeal. PPE Casino Resorts further argued

that no other statute authorized an appeal in the case and that, therefore, there was no appellate jurisdiction. More specifically, PPE Casino Resorts pointed to Title 6 of the Election Article, relating to "Petitions," and § 6–209 of Title 6 which provides for judicial review in a circuit court. Title 6, however, contains no express provision for an appeal from a circuit court's judgment to either the Court of Special Appeals or the Court of Appeals.

The principle reflected in § 12–302(a) of the Courts and Judicial Proceedings Article, that the general appeals statute does not authorize an appeal from a trial court judgment reviewing, *inter alia,* the decision of an administrative agency, originated as part of a judicially created doctrine in 1837. *See Wil. & Susq. R.R. Co. v. Condon,* 8 G. & J. 443, 448–449 (1837). The principle, as applied to administrative agencies and local legislative bodies, was embodied in a statute with the enactment of the Courts and Judicial Proceedings Article in 1973.

During the period from 1837 until the present, there have been literally hundreds of cases decided by this Court involving appeals from trial court judgments in actions for judicial review of decisions by state and county election officials or agencies. None of these cases, as far as we are aware, has applied the jurisdictional principle embodied in § 12–302(a) to appeals from judgments reviewing the decisions of state or county election officials or agencies.[7] As the State Board of

---

7. In *Gisriel v. Ocean City Elections Board,* 345 Md. 477, 693 A.2d 757 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), this Court discussed § 12–302(a) at length but held that the statute was inapplicable because the action was, in substance, a common law mandamus action. Moreover, the *Gisriel* case involved a municipal election board and not a county or state board, and the Court noted, 345 Md. at 508 n. 20, 693 A.2d at 772–773 n. 20, that "municipal elections are generally not covered by the" Election Code. *See* Maryland Code (2002, 2010 Repl.Vol.), §§ 1–101(v)(3), 101(cc) and 2–202(a) of the Election Article, generally exempting municipal election boards, except in Baltimore City, from the Election Article of the Code. *See also Hanna v. Young,* 84 Md. 179, 182, 35 A. 674, 675 (1896) (" 'It is sufficient to say that no municipal elections, except those held in the city of Baltimore, are [generally] within the terms or meaning of

Elections and the Anne Arundel County Board of Elections pointed out in the present case, if PPE Casino Resorts' motion to dismiss were meritorious, "several seminal decisions of this Court never should have been decided." (Joint brief of Election Boards at 4, n. 3). More importantly, if there were no appellate jurisdiction in numerous election cases decided by this Court and the Court of Special Appeals, the ramifications could be extremely disruptive. A "judgment made by a court lacking jurisdiction to enter it is void." *County Commissioners v. Carroll Craft,* 384 Md. 23, 44, 862 A.2d 404, 417 (2004). *See also Tshiwala v. State,* 424 Md. 612, 621–622, 37 A.3d 308, 313 (2012); *Carey v. Chessie Computer,* 369 Md. 741, 755–757, 802 A.2d 1060, 1068–1069 (2002).

■ Where, over a long period of time, there have been many opinions of this Court concerning a particular subject matter, and a legal principle or statute may arguably appear to be applicable to that subject matter, but none of our opinions have applied the principle or statute to the subject matter, it is reasonable to infer that the principle or statute was not intended to apply. *See Schochet v. State,* 320 Md. 714, 734, 580 A.2d 176, 185 (1990) ("Despite the many cases in this Court involving [the criminal statute at issue], none has been a prosecution based on [the type of conduct before the Court]. . . . This is a strong indication that such conduct is not within the contemplation of [the statute]"). Similarly, the absence in this Court's election opinions of any discussion of the principle created in 1837, and embodied in § 12–302(a), is a strong indication that the principle does not apply to such cases.

Title 12, subtitle 2, of the Election Article of the Code furnishes additional confirmation that the non-appealability principle of § 12–302(a) was not intended to apply to decisions

[Article I of] the Constitution,' " quoting *Smith v. Stephan,* 66 Md. 381, 388, 7 A. 561, 562 (1887)). *But cf. Gisriel,* 345 Md. at 502–508, 693 A.2d at 769–772. Whether § 12–302(a) of the Courts and Judicial Proceedings Article applies to municipal election agencies (other than in Baltimore City) is not presented by this case. It is an open issue to be resolved in a future case where it is presented.

of county election boards. Sections 12–201 and 12–202(a) of the Election Article provide as follows:

*"Subtitle 2. Judicial Review of Elections.*

**"§ 12–201. Scope of subtitle.**

This subtitle applies to an issue arising in an election conducted under this article.

**"§ 12–202. Judicial challenges.**

(a) *In general.*—If no other timely and adequate remedy is provided by this article, a registered voter may seek judicial relief from any act or omission relating to an election, whether or not the election has been held, on the grounds that the act or omission:

(1) is inconsistent with this article or other law applicable to the elections process; and

(2) may change or has changed the outcome of the election."

Section 12–203 deals with the judicial review procedure and expressly authorizes an appeal. The section states:

**"§ 12–203. Procedure.**

"(a) *In general.*—A proceeding under this subtitle shall be conducted in accordance with the Maryland Rules, except that:

(1) the proceeding shall be heard and decided without a jury and as expeditiously as the circumstances require;

(2) on the request of a party or sua sponte, the chief administrative judge of the circuit court may assign the case to a three-judge panel of circuit court judges; and

(3) an appeal shall be taken directly to the Court of Appeals within 5 days of the date of the decision of the circuit court.

(b) *Expedited appeal.*—The Court of Appeals shall give priority to hear and decide an appeal brought under subsection (a)(3) of this section as expeditiously as the circumstances require."

Consequently, to the extent that the other provisions in the Election Article fail to provide for judicial review of a county election board's decision on "an issue arising in an election conducted under" the Election Article, § 12–202 of that Article authorizes judicial review. Where a provision in the Election Article authorizes judicial review but fails to authorize an appeal, such as in Title 6, and if it were assumed, *arguendo*, that the general appeals statute would not authorize an appeal, the "remedy" would not be "adequate" in the words of § 12–202(a). In that hypothetical situation, § 12–203(a)(3) would authorize an appeal.

Sections 12–202(a) and 12–203(a)(3) of the Election Article, by broadly authorizing judicial review and an appeal under the Election Article in any case where no other adequate remedy was provided by the Article, show that the Legislature had no intention of applying the non-appealability principle of § 12–302(a) to cases under the Election Article.

Moreover, county election boards are significantly different from the local government administrative agencies involved in the cases applying the non-appealability principle embodied in § 12–302(a). One difference between a county election board and most other local administrative agencies is that a county election board is a state agency and not an agency of the county. *State Ethics Commission v. Antonetti*, 365 Md. 428, 448 n. 11, 780 A.2d 1154, 1166 n. 11 (2001); *Rucker v. Harford County*, 316 Md. 275, 284, 558 A.2d 399, 403 (1989). Each county election board "is subject to the direction and authority of the State Board and is accountable to the State Board for its actions in all matters regarding" the election law. Maryland Code (2002, 2010 Repl.Vol.), § 2–201(a)(2) of the Election Article. *See also County Council v. Montgomery Ass'n*, 274 Md. 52, 62, 333 A.2d 596, 602 (1975) (The "pervasive state administrative control of the election process, on both the statewide and local levels, is a compelling indication that the General Assembly . . . intended that the conduct and regulation of elections be strictly a state function"). Consequently, in circuit court actions to review administrative decisions under the election laws, ordinarily the administrative decisions

are effectively those of both the county election boards and the State Board. Moreover, § 2–105 of the Election Article grants to the State Board the right to "join as a party" in "any judicial proceeding in which a local board is a party." Circuit court judgments in actions for judicial review of decisions by the State Board are appealable under the State Administrative Procedure Act, Maryland Code (1984, 2009 Repl.Vol.), § 10–223 of the State Government Article.

■ We hold, therefore, that § 12–302(a) of the Courts and Judicial Proceedings Article has no application to cases arising under the Election Article. Where the Election Article authorizes judicial review but is silent regarding an appeal, such as in Title 6, the general appeals statute, § 12–301 of the Courts and Judicial Proceedings Article, authorizes an appeal. Where the Election Article does not provide for judicial review, §§ 12–201 through 12–203 of the Election Article authorize judicial review and an appeal.[8]

---

**8.** There are additional reasons which may support the conclusion that the General Assembly had no intention of applying the non-appealability principle of § 12–302(a) of the Courts and Judicial Proceedings Article to Title 6 cases like the present one.

Section 6–209(a) of the Election Article provides for a "judicial review" action by a "person aggrieved by a determination made under" Title 6, to be filed in a circuit court. Section 6–209(a)(3) states: "Judicial review shall be expedited by *each court* that hears the cause. . . ." (Emphasis added). The reference to "each court" obviously refers to one or more courts other than the circuit court, and the only such courts are the two appellate courts. If the non-appealability principle were intended to apply, the statute would not have used the phrase "each court."

While § 6–209(a) of the Election Article authorizes a judicial review action by an aggrieved person, § 6–209(b) provides that "any registered voter" may bring an action "[p]ursuant to the Maryland Uniform Declaratory Judgments Act" for "declaratory relief as to any petition with respect to the provisions of this title or other provisions of law." For a discussion of § 6–209 of the Election Article, *see Doe v. Board of Elections*, 406 Md. 697, 713–716, 962 A.2d 342, 351–354 (2008). While the Declaratory Judgments Act contains no provision for appeals, final judgments in declaratory judgment actions have consistently been treated as appealable by this Court, presumably under the general appeals statute. This Court's opinions have not discussed the appealability of a declaratory judgment in the context of § 12–302(a) of the Courts and

## III.

■ The Anne Arundel County zoning ordinance known as Bill No. 82–09, which permitted video lottery facilities in certain areas, was clearly not an "ordinance making any appropriation for current expense for maintaining the County government" within the meaning of § 308(a) of the Anne Arundel County Charter, authorizing a referendum on ordinances except those making an appropriation.[9] Bill No. 82–09 was simply not an appropriation ordinance. It contained no financial provisions. Instead, Bill No. 82–09 was a typical zoning enactment and, therefore, was subject to a referendum under the Anne Arundel County Charter.

Just recently, in *Doe v. Maryland State Board of Elections,* 428 Md. 596, 610, 53 A.3d 1111, 1119 (2012), this Court reiterated that an appropriation act, within the meaning of the state constitutional referendum provision which is similar to

---

Judicial Proceedings Article and under circumstances like those in the present case.

In *Bowen v. Annapolis,* 402 Md. 587, 937 A.2d 242 (2007), retired municipal employees sought judicial review of a municipal agency's decision concerning the retirees' pension benefits, although there was no statutory right of judicial review applicable to the issues relating to the retirees' pension benefits. The retired employees also sought declaratory and injunctive relief. The Circuit Court reversed the agency decision, and the municipality appealed. The retirees moved to dismiss the appeal, but the Court of Special Appeals denied the motion and reversed the Circuit Court. This Court granted certiorari and, in recounting the arguments made in the Court of Special Appeals, said that the retirees in that court relied on § 12–302 of the Courts and Judicial Proceedings Article and that the Court of Special Appeals held that the action was in substance a common law mandamus action and thus appealable. *Bowen,* 402 Md. at 602, 937 A.2d at 251. This Court did not thereafter mention § 12–302, although the retirees, in their brief in this Court, made an extensive argument based on § 12–302(a) of the Courts and Judicial Proceedings Article. (Briefs, September Term 2007, No. 34, petitioners' brief at 9–16). This Court held that the "Court of Special Appeals ... had the jurisdiction ... as, under our jurisprudence, actions for declaratory and injunctive relief ... are reviewable on appeal." *Bowen,* 402 Md. at 607, 937 A.2d at 254. *See South Easton v. Easton,* 387 Md. 468, 476–478 n. 3, 876 A.2d 58, 62–64 n. 3 (2005). *See also County Commissioners v. Carroll Craft,* 384 Md. 23, 862 A.2d 404 (2004).

**9.** *See* n. 2, *supra.*

§ 308(a) of the Anne Arundel County Charter, is "'a lawful legislative act whose primary object is to authorize the withdrawal ... of a certain sum of money for a specified public object or purpose,'" quoting *Dorsey v. Petrott,* 178 Md. 230, 245, 13 A.2d 630, 637–638 (1940). An appropriation act, for referendum purposes, also includes a tax statute. *See Baltimore County C.A.U.T. v. Baltimore County,* 321 Md. 184, 201, 582 A.2d 510, 518 (1990) ("the flat holding of our cases [is] that a law imposing or providing for a tax levy for maintaining the government is not referable to the voters"). *See also, e.g., Kelly v. Marylanders For Sports Sanity, supra,* 310 Md. at 457, 530 A.2d at 254. (The appropriation "'exception was intended to include all laws providing revenue for and/or appropriating monies to any organized department of the State'" for "'the exercise of State functions,'" quoting then Attorney General Robinson, 12 Op. Att'y Gen. 228, 236 (1927)); *Bayne v. Secretary of State,* 283 Md. 560, 570, 392 A.2d 67, 72 (1978); *Bickel v. Nice,* 173 Md. 1, 10–11, 192 A. 777, 781–782 (1937); *Winebrenner v. Salmon,* 155 Md. 563, 567, 142 A. 723, 724–725 (1928).

Neither the Circuit Court nor PPE Casino Resorts disputed the conclusion that Bill No. 82–09 itself was not an appropriation act. The Circuit Court stated that "it agrees with all parties that Bill 82–09 is not an appropriation bill. . . ." Nevertheless, as earlier pointed out, the Circuit Court viewed the zoning ordinance as "interdependent and legally inseparable from a larger appropriations package." The "larger appropriations package," according to the Circuit Court, consisted of Article XIX of the Maryland Constitution, which was proposed by the General Assembly in 2007 and ratified by the voters in 2008, and statutes enacted by the General Assembly in 2007 to implement Article XIX. Article XIX provided for licenses to operate video lottery terminals at five locations within the State "for the primary purpose of raising revenue for (i) Education for the children of the State in public schools ..., (ii) Public school construction and public school capital improvements ...," as well as other programs. The implementing legislation, *inter alia,* established the Education Trust

Fund consisting of certain revenues anticipated from the video lottery terminals. In addition, as the Circuit Court pointed out, the awarding of licenses for video lottery terminals was "conditioned on the location receiving the proper zoning." *See* Article XIX, §§ 1(c)(1) and 1(c)(5). The Circuit Court reasoned that, if "Bill 82–09 was subject to referendum, the constitutional and legislative purposes set forth under Article XIX and the Maryland Education Trust Fund Act would be delayed and thwarted, if not fatally undermined."

Accordingly, the Circuit Court concluded that Bill No. 82–09 was "legally inseparable . . . from a constitutionally mandated appropriation law to maintain public education. . . ." As mentioned earlier in this opinion, the Circuit Court chiefly relied on *Kelly v. Marylanders For Sports Sanity, supra,* 310 Md. 437, 530 A.2d 245, where a statute, which itself was not an appropriation act, was considered with two other related statutes, and the three were deemed a single package constituting an appropriation. PPE Casino Resorts' position in this Court essentially reflected the reasoning of the circuit judge.

The Circuit Court's and PPE Casino Resorts' reliance upon the *Kelly* case, and the reasoning of *Kelly,* is misplaced. The circumstances of the present case are quite different from those in *Kelly.* Bill No. 82–09 did not have a similar relationship to Article XIX of the Constitution and its implementing legislation that the interrelated bills in *Kelly* had to each other.[10]

The *Kelly* case involved three bills recommended by the Maryland Stadium Authority. The Maryland Stadium Authority was created by Ch. 283 of the Acts of 1986 as an instrumentality of the State and was "empowered to determine the location of, and construct and maintain" sports facilities which included, "in addition to the site, 'stadiums for the primary purpose of holding professional football games, major league professional baseball games, or both, in the

10. For a recent review of the *Kelly* case, *see* Judge Greene's opinion for the Court in *Doe v. Maryland State Board of Elections,* 428 Md. 596, 53 A.3d 1111 (2012).

Baltimore metropolitan area.' " *Kelly,* 310 Md. at 439, 530 A.2d at 246. The "Authority was permitted to issue bonds in connection with its acquisition and construction of facilities," and "was empowered, by gift or purchase, to acquire any property needed 'to construct or operate any facility.' " *Kelly,* 310 Md. at 440, 530 A.2d at 246. After studying the matter, "the Authority recommended an 85–acre tract in Baltimore City, known as Camden Yards, as the most appropriate site" for a baseball stadium and a football stadium. *Kelly,* 310 Md. at 440–441, 530 A.2d at 246.

Upon the Authority's recommendation, three bills were introduced in the 1987 session of the General Assembly on behalf of Governor Schaefer's administration. The three bills were passed by the General Assembly and, upon the Governor's signing all three bills on April 29, 1987, they became Chs. 122, 123, and 124 of the Acts of 1987. Ch. 122 authorized the Authority to acquire the 85–acre site known as "Camden Yards" and to "construct or enter into a contract to construct the [sports] facility on that site." Ch. 123 authorized the Authority to acquire the Camden yards site by ordinary condemnation or by quick-take condemnation. Ch. 123 provided that any receipts of the Authority be deposited in its "Financing Fund," and required the Authority to submit annually a budget to the Department of Budget and Fiscal Planning. Ch. 124 related to the financing of the Authority's site acquisition and construction of stadiums. It provided that the Authority should solicit funds from private investors in order to minimize its use of state lottery funds. Ch. 124 contained provisions relating to the sale of the Authority's bonds, and required that Baltimore City pay one million dollars annually into the Authority's Financing Fund. Ch. 124 contained other provisions relating to the Authority's financing.

Opponents of the above-described enactments undertook to petition Chs. 122 and 124 to referendum under Article XVI of the Maryland Constitution. When referendum petitions were submitted, the state officials refused to accept them on the advice of the Attorney General that neither statute was referable. The opponents brought a mandamus action which culmi-

nated in this Court's *Kelly* decision. The trial court in *Kelly* had held that the Acts were referable on the ground, *inter alia*, that neither made "any appropriation for maintaining the State Government," and thus they were not within the appropriation exception in Article XVI of the Constitution. This Court, in an opinion by former Chief Judge Robert Murphy, reversed, holding that the Acts fell within the appropriation exception.

With regard to Ch. 124, Chief Judge Murphy, quoting *Dorsey v. Petrott*, 178 Md. at 244, 13 A.2d at 637, emphasized " 'that revenue measures to raise the public funds to pay the appropriations' " in an appropriation bill " 'are excepted from the operation of the Referendum Amendment, although the revenue thus procured is disbursed by ... [a different bill] without any express authorization in the money bill for its disbursement.' " *Kelly*, 310 Md. at 459, 530 A.2d at 255–256. On the issue of whether Ch. 124 was an appropriation bill, Chief Judge Murphy concluded (*Kelly*, 310 Md. at 460–461, 530 A.2d at 256–257):

"Chapter 124 is, therefore, a finely tuned law containing an intricate financing mechanism to permit the State to receive and expend public monies required to obtain a site and to construct the contemplated sports facilities in the public interest. Specifically, it authorizes the borrowing of funds through the issuance of bonds, the disbursement of those funds through the Authority's Financing Fund, and the payment of the Authority's bonded indebtedness through monies directed to be paid by the State to the Authority through annual appropriations in the Budget Bill, by the City of Baltimore, and through the Authority's own revenues included in its Financing Fund.... [C]h. 124 is a type of revenue raising and spending measure intended to be embraced within the exclusionary provisions contained in the Referendum Amendment."

Turning to Ch. 122, which designated Camden Yards as the stadium site, Chief Judge Murphy for the Court recognized that, by itself, Ch. 122 was not an appropriation act. Nevertheless, the Court in *Kelly*, 310 Md. at 474, 530 A.2d at 263,

held that Ch. 122 could not be considered separately and that the three acts together had a single

"dominant purpose—to finance the acquisition of a site upon which to construct sports stadiums. As this legislative purpose constitutes, in effect, a single, inseparable 'law' making an appropriation for maintaining the State government, none of the individual parts of the package is referable under Art. XVI to a vote of the people."

The *Kelly* opinion relied on various circumstances regarding the three acts, pointing out that "the three stadium bills were introduced and considered by the Legislature as a single 'package' of bills" (310 Md. at 469, 530 A.2d at 261), that, according to the affidavit of the Director of the Department of Fiscal Services, "the three bills were treated in each house as a unit or package" (310 Md. at 470, 530 A.2d at 261), and that they were treated as a single package at the committee hearings in each house, in the committee reports, and at the voting sessions. This Court in *Kelly* continued (310 Md. at 472, 530 A.2d at 262):

"We have held time and again that statutes dealing with the same subject matter, particularly when enacted at the same session, being *in pari materia,* must be read together in order to determine their proper construction.  * * * In interpreting Art. XVI, § 2 of the Constitution, the same principles govern what comprises an appropriation 'law.' The provision in Art. XVI under which '[n]o law making any appropriation for maintaining the State Government ... shall be subject to' referendum has as its *constitutional* purpose protecting from referendum the purpose or object of the *legislative* appropriation."

Finally, the Court in *Kelly* held that "[t]o sever Ch. 122 ... would not just thwart the legislative design but ... would scuttle the entire project by fatally undermining its dominant purpose—to finance the acquisition of a site upon which to construct sports stadiums." (310 Md. at 474, 530 A.2d at 263).

The types of circumstances relied on in *Kelly* to treat the three stadium acts together as a single package, and deem the

package to constitute an appropriation, were absent in the case at bar. The three bills in *Kelly* were introduced in the same legislative body (the General Assembly) at the same time and considered by that legislative body as a single package. In the present case, however, the pertinent acts relied on by the Circuit Court and PPE Casino Resorts involved different "legislative" bodies, were not "enacted" at the same time, and were never treated as a single package. Article XIX of the Maryland Constitution, although proposed by the General Assembly, was enacted by the voters of Maryland at the general election in November 2008. The statutory provisions creating the Education Trust Fund were considered by and enacted by the General Assembly in 2007. Bill No. 82–09, rezoning one area of Anne Arundel County, was considered by and enacted by the Anne Arundel County Council in December 2009.

The three statutes in *Kelly* all affected the same area of the State, *i.e.*, an 85–acre parcel in Baltimore City. In the present case, however, Bill No. 82–09 affected a particular area of Anne Arundel County, whereas Article XIX and the implementing legislation affected, in addition to the area in Anne Arundel County, areas in Baltimore City, Worcester County, Cecil County, and Allegany County.

Moreover, in contrast to the situation in *Kelly*, 310 Md. at 474, 530 A.2d at 263, a referendum defeat of Bill No. 82–09 would not "scuttle the entire project" and "fatally undermin[e] . . . [the] dominant purpose" of Article XIX of the Constitution and its implementing legislation. There would remain four other video lottery facilities in the State to produce revenue for, *inter alia*, the Education Trust Fund. Furthermore, as shown by Ch. 1 of the 2012 Second Special Session of the General Assembly, proposing, *inter alia*, a video lottery facility in Prince George's County, Article XIX of the Constitution contains a procedure, culminating in a vote by the electorate, for adding more video lottery facilities in various areas of the State.

The status of Bill No. 82–09, in relation to Article XIX of the Constitution and the Education Trust Fund law, is no different than it would have been if the local zoning law had been enacted many years before the enactment of Article XIX and the Education Trust Fund law. Thus from 1943 until 1968, slot machines, as well as any other "amusement devices," were lawful in Anne Arundel County and were present in commercial establishments throughout the County. Presumably, slot machines were not prohibited under any local zoning ordinances. The pertinent history was set forth by this Court in *State v. 158 Gaming Devices,* 304 Md. 404, 499 A.2d 940 (1985), and *Clerk v. Chesapeake Beach Park,* 251 Md. 657, 248 A.2d 479 (1968). *See also* Ch. 321 of the Acts of 1943 (legalizing slot machines in Anne Arundel County), and Ch. 551 of the Acts of 1943 (authorizing, for the first time, zoning regulations in Anne Arundel County). Assuming, hypothetically, that there was an Anne Arundel County zoning ordinance allowing slot machines and slot machine facilities during the 1943–1968 period and that the ordinance has remained in effect, clearly that hypothetical zoning ordinance could not at the present be petitioned to referendum.[11] Nevertheless, for purposes of the requirement in Article XIX, § 1(c)(5), of the Constitution, that a "video lottery facility shall comply with all applicable . . . zoning laws of the local jurisdiction," it makes no difference whether the relevant zoning law had been in place for several years or was just enacted. Consequently, it would be unreasonable to treat Article XIX, plus the state implementing legislation, and the local zoning ordinance as "a single, inseparable 'law' " (*Kelly,* 310 Md. at 474, 530 A.2d at 263).

While the motivation underlying Bill No. 82–09 may have had a connection with Article XIX of the Constitution, the motivation underlying many local zoning ordinances may have had a connection with a program under State law involving appropriations. This is insufficient to render a local zoning

---

11. Under § 308(a) of the Anne Arundel County Charter, a referendum petition must be filed within 45 days after the ordinance becomes law.

ordinance and the State law a single "package" for purposes of the referendum exception for appropriation acts. Bill No. 82–09, regardless of the motivation for its passage by the County Council, was simply a local ordinance re-zoning an area. As such, it was not exempt from a referendum.[12]

---

12. In addition to the two principal issues raised on this appeal, concerning the appealability of the Circuit Court's judgment and whether Bill No. 82–09 could be petitioned to referendum, PPE Casino Resorts has also raised an issue concerning the sufficiency of the circulators' affidavits and an issue regarding the trial judge's refusal to permit, based on PPE Casino Resorts' proffer, an expert's testimony about possible "fraud, misrepresentations, and forgery in the petition process," (PPE Casino Resorts' brief at 52). With regard to the circulators' affidavits, it is undisputed that they complied with § 6–204 of the Election Article and the State Board's regulations thereunder. PPE Casino Resorts argues, however, that the affidavits failed to comply with an additional requirement contained in Anne Arundel County law. The trial judge correctly rejected this argument, pointing out that, to the extent of any conflict, the State Election Article controlled. *See* §§ 1–101(v), 2–202(a) and (b), and 6–102 of the Election Article, indicating that the state law applies to state and county elections but not municipal elections. *See also County Council v. Montgomery Ass'n,* 274 Md. 52, 62, 333 A.2d 596, 602 (1974 & 1975). As to the proffer of expert testimony regarding fraud, misrepresentation, etc., it was in terms of general conclusions, without any supporting facts. The failure to permit the expert testimony was not reversible error.